Territt et al. *v.* Bartlett.

—»»●◎●••—

H. N. TERRITT AND DUDLEY R. TERRITT *v.* BENJAMIN P. BARTLETT.

A contract, which has for its object the performance of an act, which is prohibited by express statute, or the commission of which incurs a penalty, is as much illegal and void, as if the statute in express terms had declared it to be so.

Since the enactment of the statute of 1844, which prohibits the sale of spirituous liquors in this state, except under license to sell for certain specified purposes, the plaintiffs, who were doing business in the city of New York, made a contract, in Vermont, with a person residing there, by which they agreed to forward to him, by common carriers, spirituous liquors, which they at the time knew he intended to sell in Vermont without license, and in violation of the law; and it was held, that the plaintiffs could not sustain an action in the courts of this state to recover therefor.

BOOK ACCOUNT. Judgment to account was rendered in the county court, and an auditor was appointed, who reported the facts as follows.

Territt et al. *v.* Bartlett.

The plaintiffs claimed to recover for brandy and gin sold by them to the defendant May 20, 1846. At the time the account accrued, the plaintiffs, as partners, were dealing in spirituous liquors in the city of New York, and the defendant was an inn-keeper at Brandon, in Vermont. Sometime in May, 1846, one of the plaintiffs called upon the defendant at his inn in Brandon, and proposed to sell to him a quantity of liquors; and the defendant then ordered from the plaintiffs the quantities of brandy and gin specified in the plaintiffs' account, and directed, that the kegs, in which the liquors were to be sent, should be marked "B., Brandon, Vermont," and consigned to the care of one Chipman, at Orwell, Vermont. The plaintiff who effected the sale was then informed and knew that the defendant was not and did not then expect to be licensed to be a keeper of an inn, or retailer, or otherwise licensed to sell spirituous liquors, agreeably to the provisions of the laws of this state; and it was then in the contemplation of the plaintiff and defendant, that the liquor, then ordered by the defendant, was to be subsequently sold by him within this state. The plaintiff knew, previous to the sale to the defendant, that, by the laws of this state, the sale of spirituous liquors, by persons not having a license for that purpose, was prohibited.

The liquors were forwarded by the plaintiffs, by common carriers, from their store in New York, agreeably to the directions given by the defendant, and were received by Chipman, at his store house in Orwell, in due season, and remained there at the time of the hearing before the auditor. It did not distinctly appear, whether, or not, the kegs were subject to freight, or other charges, at the time they were received by Chipman. The defendant received due notice, that the liquor had been received by Chipman, and not long afterwards he proposed to sell it to one Gay; but he never sent for it, nor exercised any other act of ownership over it; nor did he give notice to the plaintiffs, that he declined to receive the liquor, until several months subsequent, when he was called upon by them for payment.

Upon these facts the county court, November Adjourned Term, 1847,—HALL, J., presiding,—rendered judgment for the defendant. Exceptions by plaintiffs.

24

Territt et al. *v*. Bartlett.

*Linsley & Prout* for plaintiffs.

1. Upon the delivery of the goods to the common carriers, the sale was complete, and the property then vested in the defendant; 2 Kent 498; Chit. on Cont. 347, 384; and a right of action then accrued to the plaintiffs for the price, which can be enforced in New York,—and if so, it necessarily follows, that it is to be enforced here.

The law of this state does not prohibit the sale of spirituous liquors, but expressly allows it. It contains numerous provisions to render the trade more beneficial, and designates the manner in which persons shall be qualified. When a statute entirely prohibits an act, the act itself is illegal to the whole community; and the effect of such a statute is very different from one which is to be regarded as a mere police or revenue regulation. The case of *Johnson v. Hudson*, 11 East 179, fully sustains this distinction. In that case the seller of the tobacco, without license, was allowed to recover. *Gremare v. Le Clerc Bois Valon*, 2 Camp. 144. If the plaintiffs knew, that the defendant proposed to sell the liquors here without license, it does not affect their right of recovery. The leading case of *Holman v. Johnson*, 1 Cowp. 341, is in point. It was there held by Lord MANSFIELD, that the seller's knowing, that the buyer intended to smuggle the goods, did not prevent his right to recover. In *Biggs v. Lawrence*, 3 T. R. 454, *Clugas v. Penaluna*, 4 T. R. 466, *Wamell v. Reed*, 5 T. R. 599, and *Hodgson v. Temple*, 5 Taunt. 181, [1 E. C. L. 67,] the doctrine of Lord MANSFIELD is recognized. The case of *Case v. Riker*, 10 Vt. 482, does not raise this question, and the case is clearly rightly decided; but the reasoning of the court, it is conceived, is not law. The learned judge may have been misled by a partial examination of the case of *Lightfoot v. Tenant*, 1 B. & P. 551;—and the case of *Holman v. Johnson* is cited, without any intimation against its soundness.

This case is entirely unlike cases, where a statute declares sales void, unless the article sold be of a particular description, or where, for any reason, the statute declares the contract void, or where the action is brought to compel a man to do that, which is prohibited by a statute, or where the action is founded in fraud, or is im-

moral, or where the seller, by some overt act, aids the buyer in evading a statute prohibitory to the whole community.

At the most, in this case, there was but a mere *intent* to break the law.

*Briggs & Williams* for defendant.

Upon the facts found, the judgment of the county court was in exact accordance with the decisions in *Lightfoot* v. *Tenant*, 1 B. & P. 551; *Cannan* v. *Bryce*, 3 B. & Ald. 179, [5 E. C. L. 255;] *Langton* v. *Hughes*, 1 M. & S. 593; and with the law as laid down in Story on Cont. 145, § 226, and Story's Confl. of Laws, 209, §§ 253, 254, where all the cases are reviewed. The question here involved seems to be fully decided in *Case* v. *Riker*, 10 Vt. 482, where it is apparent the decision would have been against a recovery, if it had appeared, that the plaintiffs knew, that the sale of lottery tickets in this state was prohibited. The case of *Holman* v. *Johnson* and the other cases, upon which the plaintiffs rely, were decisions wholly in reference to revenue laws, were never extended to cases arising under other classes of prohibitory statutes, and are now regarded as of but little weight,—being considered as virtually overruled by the later decisions. The statute of this state, which prohibits the sale of spirituous liquors, is not designed for revenue, but for the prevention of what is justly regarded as a great moral evil. 2 Kent 467.

The opinion of the court was delivered by

REDFIELD, J. This is an action to recover of the defendant the price of spirituous liquors. The contract of sale was closed between the parties at Brandon, in this state. The liquors were to be consigned by the plaintiffs, who were merchants in the city of New York, to the defendant, who was an innkeeper at Brandon, to be landed at Orwell, marked " B., Brandon, Vermont." The plaintiffs, at the time of making the contract, knew, that the defendant intended to retail the liquors in this state, without a license, and that this was in violation of the statute law of this state. The member of the plaintiff's firm, who made the contract with the defendant at Brandon, immediately upon returning to New York caused the liquors to be forwarded to the defendant, as agreed. The ques-

tion is, whether, upon these facts, the plaintiffs are entitled to recover the price of the liquors, in the courts of this state.

If this were clearly the case of a sale and delivery in this state, the question would admit of no doubt whatever. But the delivery, for most purposes, is to be regarded as complete in the state of New York, unless the plaintiffs paid the freight,—which does not appear. There is, indeed, a class of English cases, which have attempted to show a distinction between mere revenue laws and those laws, which have for their object the protection of the public morals, or the preservation of good order and fair dealing,—allowing an action to be maintained upon contracts made in contravention of some specific revenue or excise regulation, upon the supposed intention of the legislature not to visit the consequences of a violation of such particular laws upon the offender, beyond the specific penalty provided by the statute. Of this class are *Hodgson* v. *Temple*, 5 Taunt. 181; [1 E. C. L. 67]; *Johnson* v. *Hudson*, 11 East. 180; and *Brown et al.* v. *Duncan*, 10 B. & C. 93; [21 E. C. L. 29.] Whether this distinction is to be considered as having any just foundation in sound reason and good principle, or whether, in fact, it can be treated as fairly established in the English courts, it is perhaps not important to inquire here. It seems to me very obvious, that no such distinction can be maintained, upon the basis of any fair and sound argument. The case of *Brown* v. *Duncan* has certainly been very often questioned by the English courts, and is placed among cases " doubted," by Professor Greenleaf, in his Collection, p. 56, where numerous English cases are referred to, in which that case has been treated as unsound. And the same may, with justice, be said of *Johnson* v. *Hudson*. See the opinion of LITTLEDALE, J., in *Brooker* v. *Wood*, 3 Nev. & M. 96.

But it is impossible for this court to regard the statutes of this state, prohibiting the sale of spirituous liquors, except with licenses, as merely or principally revenue laws. These statutes have been the subject of great study and much experiment, in the legislature, but with no view to increase revenue, but exclusively, almost, for the purpose of more effectually repressing and preventing intemperance and disorder in the community. I do not myself intend to say, of every sale of spirits, or wine, to persons in health, and for their own use, that it is, aside from the statute, reprehensible, or

Territt et al. v. Bartlett.

immoral, either in the seller or the purchaser. I do not yet feel prepared to say, that such a declaration is clearly consistent with sound sense and wise experience ; but there is no manner of doubt, that the common and unrestricted sale and use of spirits and wine has caused a vast deal of poverty, immorality and crime, so that the subject of its sale and use may be said fairly to come within the legitimate power of the legislature, in regulating the administration of the internal police of the state. And we think, that the penalties and prohibitions of the statutes upon this subject have a primary and principal reference to the quiet and good order of the community, and that revenue was intended to be merely incidental to the main purpose sought to be effected. How much, indeed, it will be found practicable to accomplish, in this way, is a subject for the legislature and the people, and with which courts have really no concern. Every good citizen would hope for the best, and he would have the right to expect not to be subjected to the ostracism of public opinion, if he feared the worst. The indications are now favorable ; and if they were less so, the statutes would require to be fairly enforced, notwithstanding.

A contract, then, which has for its object, or which contemplates, any act prohibited by express statute, or the commission of which incurs a penalty, is as much illegal and void, as if the statute in express terms so declared. Hence all spirits sold here, in violation of the license laws, can never form the basis of a recovery in our courts. But in a case precisely like that of *Holman* v. *Johnson*, 1 Cowp. 341, where the sale and delivery were both made in another state, and the seller did nothing to promote the illegal object, except what was necessary to pursue his own lawful business, in the foreign state, although he might have known the illegal purpose contemplated by the vendee, I should have no doubt an action would lie in our courts. It might fairly be said, that the mere knowledge of the illegal purpose of the vendee is something which the vendor could not avoid ; and, at the same time, something which he could not regard without prejudice, and unjust prejudice, to his own lawful business, and that out of regard to the law of a foreign state, which, properly speaking, could have no extra-territorial force. It would be, then, wholly consistent with the most scrupulous regard to duty and morality, for one to make such sale in the lawful pur-

Territt et al. *v.* Bartlett.

suit of his own business, in his own country, and this is all that the case of *Holman* v. *Johnson* decides. But that reasoning will not apply to the case of a sale made here. And that is a case, which comes up to the utmost limit of sound doctrine. And so it has been considered in the English courts. *Biggs* v. *Lawrence*, 3 T. R. 454. That is the case where the vendor of brandy, in ~~Guernsey~~, packed it in ankers, in preparation for smuggling, and it was held, he could not recover the price, because he was thus implicated in the unlawful purpose. What is done abroad, beyond the mere business of the vendor, and specially to promote the illegal design of the vendee, is justly referable to the place where the unlawful design was to be accomplished, and so is a violation of the law of that state, although transacted in the foreign country. This is made very obvious from the simple illustration of principals and accessories in crime. It has been held, that one, who never came within the state, may even be the principal, in a case of uttering forged paper, by merely putting it off, through the instrumentality of the post-office. So, too, it has always been held, that one, who, in one county, commits or aids in the commission of crime in another county, is an accessory to the crime in the other county, and may be tried and punished there; and if he commit the crime through the instrumentality of an innocent agent, he is a principal in the crime in the county where it is committed, although never present there.

The rule upon this subject is, we think, correctly laid down in *Langton* v. *Hughes*, 1 M. & S. 593. Lord ELLENBOROUGH says, "Without multiplying instances of this sort, it may be taken, as a received rule of law, that what is done in contravention of an act of parliament cannot be made the subject-matter of an action." That was the case of drugs sold to a brewer, *with the knowledge* that they were intended to be used in brewing, contrary to the provisions of the statute. For this, merely, the seller was considered a participator in the illegal purpose, and it was considered unimportant, whether the drugs were in fact put to the illegal use, or not. That case has never been doubted, but always followed. *Cannan* v. *Bryce*, 3 B. & Ald. 187. The rule laid down by Chief Justice EYRE, in *Lightfoot* v. *Tenant*, 1 B. & P. 551, that one who sells goods, *in the place of the forum*, knowing they are intended to be

put to an illegal use there, cannot recover the price, although going perhaps, somewhat beyond the case now before us, has been approved and followed, and may now be considered the settled law upon the subject. This rule was distinctly recognized in this court in *Case* v. *Riker*, 10 Vt. 482.

In the present case, for all practical purposes, the contract of sale must be considered as made in this state; and it cannot be disguised, that the defendant had for his main object the procuring of materials to be used in the violation of an express statute of the state, and in this object the plaintiffs were participating, countenancing and aiding the defendant. It could not, therefore, comport with a decent regard either for the statute of the state, the general rule of law upon the subject, or for the judicial administration of the state, that we should allow the plaintiffs to maintain this action in the courts of the state.

Judgment affirmed.

