Hon. LOYAL C. KELLOGG,
Hon. WILLIAM C. WILSON,　} Assistant Judges
Hon. BENJAMIN H. STEELE,

---

WALTER CARPENTER *v.* JOSEPH F. McCLURE.

*Promisory Note. Fraud. Statute.*

A covinous note, given to defraud creditors, cannot be avoided, for the fraud, by the maker, but may, notwithstanding the fraud, be enforced against him.

The statute so far as it relates to the validity of contracts fraudulent as to creditors seems to be merely declaratory of the common law.

Prohibited contracts will not usually be enforced, but in this case the same statute which impliedly prohibits contracts fraudulent as to creditors, limits the invalidating effect of the prohibition, to the "party or parties *only* whose right, debt or duty is attempted to be avoided, their heirs, executors or assigns."

Contracts to defraud creditors are not less prohibited transactions, because not forbidden by the express terms of the statute. The penalty implies prohibition.

Carpenter *v.* McClure.

ASSUMPSIT on a note dated December 16th, 1850, for $190.00 signed by the defendant, payable to the plaintiff on demand. Plea, the general issue and three pleas in bar. The pleas in bar were traversed by the plaintiff. Trial by jury, at the June Term, 1865, PECK, J., presiding.

The plaintiff read said note to the jury and rested his case.

The defendant's evidence tended to show that William F. McClure, brother of the defendant, being insolvent and desirous of securing certain property from attachment by his creditors, consisting of one horse, one wagon, two sleighs, two harnesses and two buffalo robes, entered into an arrangement with the defendant and the plaintiff, that the defendant should take a bill of sale of said property from William F. and give his note to the plaintiff for an estimated value of the property—with an understanding and verbal agreement with the plaintiff that the defendant should never be called upon to pay said note—but that the whole transaction was for the purpose of securing said property from attachment by the creditors of said William F., and to his use and benefit, and that the defendant was to account with said William F. for said property, and that he did so account.

The plaintiff's evidence tended to show that said William F. McClure was largely indebted to the plaintiff at the time of this transaction; that the transfer of the property to the defendant, and the defendant's note to the plaintiff was a *bona fide* transaction, and with no intent to defraud creditors by securing the property from attachment, and tended to deny said agreement and understanding. Much other evidence was stated in the exceptions which it is not necessary to detail.

After the evidence was closed the defendant's counsel stated that they did not claim that upon the evidence a defence was made out unless the fact that the note was executed with an intent, or for the purpose of defrauding the creditors of William F. McClure rendered the note void, as they claimed it did, and as the evidence stood they did not wish to go to the jury upon any other question. Whereupon the court decided that if the note in other respects was valid and collectable, the mere fact that it was executed and received with an intent to defraud the creditors of William F. McClure, would not

constitute a defence, although it might be avoided by such creditors. A verdict for the plaintiff was thereupon taken by consent of the defendant's counsel, the defendant excepting to the above ruling.

*C. W. Clarke,* for the defendant.

I. The note in question is void as between the parties to it, because it is in contravention of the statute against fraudulent conveyances. G. S. 672, § 33. For a contract in contravention of a statute is void, although the statute inflicts a penalty only, because such penalty implies a prohibition. *Elkins* v. *Parkhurst,* 17 Vt. 105 , *Lovejoy* v. *Whipple,* 18 Vt. 379 ; *Wheeler* v. *Russell,* 17 Mass. 257

II. An *executory* contract between parties connusant of the fraud, by which it is intended to deprive creditors of any security for their debts, is not good *quoad* the parties.

At common law it would seem to be settled that the court will allow the illegality of a contract to be shown as a defence by a *particeps criminis,* and it is believed that no English case can be found which, by its analogy, would support the ruling of the court in the case at bar. *Holman* v. *Newland,* Cowp. 341 ; *Neville* v. *Williams,* 3 P. Williams, 74 ; *St. John* v. *Benedict,* 6 Johns. ch. 111 ; *Bolt* v. *Rogers,* 3 Paige, 154 ; *Perkins* v. *Savage,* 15 Wend. 412 ; *Smith* v. *Hubbs,* 1 Fairf. 71 ; *Norris* v. *Norris,* 9 Dana, 371 ; *Nellis* v. *Clark,* 4 Hill, 424 ; *McKennee* v. *Robinson,* 3 M. & W. 434 ; *Collins* v. *Blantern,* 2 Wils. 347 ; Chit. on Con. 571.

Clearly it could not have been the object of the statute to give to such a contract a greater binding force than it had before. It cannot mean, when it says such contracts shall be void as to the creditor " *only,*" that the court will interfere to compel performance between the parties to it. It can only mean that when *performed* it shall be binding, and there shall be no relief. The title to the property shall pass. In short that the law will not interfere in any respect, nor for any purpose, except for the benefit of creditors, and that the parties shall in all cases be left precisely where the court finds them.

*Wm. Hebard* and *Peck & Fifield,* for the plaintiff.

The note is valid and binding between the parties, and void *only*

Carpenter *v.* McClure.

as to creditors. Such is the express provision of the statute. It is apparent, from the language of the act, that the contract is to be regarded as obligatory and to be enforced between the parties, and that creditors only may treat it as a nullity. The defendant should not be permitted to set up his own fraud to avoid his contract. See in addition to cases cited in the opinion, *Peaslee* v. *Barney et al.*, 1 D. Chip. 331 ; *Martin* v. *Martin*, 1 Vt. 91 ; *Bailey* v. *Foster*, 9 Pick. 139 ; *Dyer* v. *Homer*, 22 Pick. 253 ; *Wearse* v. *Pierce*, 24 Pick. 141 ; *Kelleager* v. ———— 6 Sergt. & Rawle, 531 ; *Reichart* v. *Castaloo*, 5 Binney, 109 ; *Martin* v. *Root et al.*, 17 Mass. 222 ; *King* v. *Lyman*, 1 Root, 104 ; *Potter* v. *Yale College*, 8 Conn. 52 ; *Stewart* v. *Kearney*, 6 Watts. 453 ; *Ex'r of Stark* v. *Littlepage*, 4 Randolph, 368 ; *Jackson* v. *Guernsey*, 16 Johns. 188 ; *Howe* v. *Leader*; Cro. Jac. 270 ; *Howe* v. *Leader*, Yelverton, 196 ; *Falkney* v. *Reynolds et al.*, 4 Burr. 2069 ; *Montifier* v. *Montifier*, 4 Black. 363 ; *Roberts* v. *Roberts*, 2 B. & A. 368 ; *Baldwin* v. *Cawthorne*, 19 Vesey, 166 ; 3 Bacon's Abridg. p. 313, 314.

The opinion of the court was delivered by

STEELE, J. It is proposed to defeat the plaintiff's action on the ground that the note in suit, which was founded upon consideration, was covinous and designed by both parties to defraud creditors. The parties to the suit are the original payee and maker of the note. Both parties to such a transaction are guilty of a statutory offence, and liable to a penalty to be recovered by a *qui tam* prosecution.[1] It is not less an offence because not prohibited in terms. The penalty implies prohibition.[2] It is in contravention not only of the statute but also of good faith. The law which, as Lord Mansfield observes, "abhors all fraud and covin," would doubtless, if there was no statute, protect innocent persons from injury from such contracts. As a general rule actions will not be entertained which are predicated upon a prohibited transaction. *Ex malo dolo non oritur actio.* The law will not enforce performance of a prohibited contract or give damages for its non performance or afford relief for

(1) Gen. Stat. p. 672, § 33.
(2) *Bartlett* v. *Vinor*, Carth. 252; *Lovejoy* v. *Whipple*, 18 Vt. 379.

loss from partial performance or decree restoration after complete performance. In all these cases the parties standing *in pari delicto potior est conditio defendentis.*[3] There are exceptions to this rule, most of which are made by statute, as the right to recover money lost at play or by wager.[4]

The question of the validity of this contract could only arise in an action upon it while still subsisting and unperformed, because *after performance* prohibited and unprohibited contracts are alike conclusive upon the parties. The numerous *dicta*, that such contracts are valid as to the parties and by common law and statute, void only as to creditors, are without point if so interpreted as to assert their validity as to the parties, *after performance only.* It would then be too late to find fault with contracts *illegal and void* as to the parties. Our statute provides that "*all fraudulent and deceitful conveyances of houses, lands, tenements, hereditaments, or of goods and chattels, all bonds, bills, notes, contracts and agreements, all suits, judgments and executions, made or had to avoid any right, debt or duty of any other person, shall as against the party or parties only whose right debt or duty is attempted to be avoided, their heirs, executors or assigns be null and void.*" The other section, by its penalty, prohibits these transactions. This section limits the effect of the prohibition. If such transactions were made punishable as offences, and the statute did not contain this section, it could more properly be urged that they were in all respects to be governed by the laws relating to prohibited transactions; but, while one section prohibits the covinous contract, the other limits the resulting invalidity to the innocent parties, against whose interest it is directed. A note cannot fairly be held void *only* as to creditors if it stands, like a note given to compound a felony, unenforceable as to the maker and only effectual to prevent restitution after payment by force of its corruption and not its validity.

A note or bill if ever valid as such between the parties is valid before payment. The word " *only* " in the statute is a word of limitation. It restricts the invalidating operation of the prohibition to

---

(3) *Ferguson* v. *Norman*, 35 E. C. L. 51; *Holman* v. *Newland*, Cowp. 341; *Territt* v. *Bartlett*, 21 Vt. 184; *Elkins* v. *Parkhurst*, 17 Vt., 105; *DeBegirs* v. *Armstrong*, 25 E. C. L. 58.

(4) *Dixon* v. *Olmstead*, 9 Vt. 310.

some class. That class must be either one portion of the creditors as distinguished from another, or creditors as distinguished from parties. To interpret it as the former would conflict with the current of decisions to the effect that such transactions are void as to *all* creditors.[5] The soundness of these decisions is not questioned. To interpret it as the latter would accord with the reasoning of the decisions and the authorities upon the similar statutes of 13 *and* 27 *Eliz.* In *Hawes* v. *Loader*[6] it is said : " the defendant is not such a person as is enabled by the statute, 13 *Eliz.*, to plead this plea, for the deed is made void as against all creditors, etc., but not made void against the party himself, his executors and administrators, but against them it remains a good deed of gift.' Mr. Chitty in his work on contracts, page 362, observes : " We must also remember that by the express words of the statute the fraudulent transfer is avoided only as against that person, his heirs, etc., who might be in anywise disturbed, defrauded, hindered or delayed thereby. Such a transfer is good between the parties thereto." [7] *In Dyer* v. *Homer,* [8] MORTON, J., remarks : " They expressly declare fraudulent sales and conveyances to be utterly void, frustrate and of no effect *only* as against creditors, plainly implying that between the parties they are valid and operative."

It has been held in Massachusetts that want and failure of consideration may, when true, be good defences to an action founded upon such contracts, as they are to actions upon other contracts, but by these decisions the right to impeach the contract for its fraud is limited to innocent persons. In no English case and in but two American cases, which have been brought to our notice, has the distinction which is urged here by the defendant between contracts performed and unperformed, with regard to this statute, been taken. [9]

To say a contract is valid after performance and not before, because against law or policy, is simply to say it is never valid as a

---

(5) *Reade* v. *Livingston*, 3 Johns. Ch. R. 481; *Wadsworth* v. *Havens,* 3 Wend. 411; Bull N. P. 257-8; *Damon* v. *Bryant* and cases cited 2 Pick. 414.

(6) *Hawes* v. *Loader*, as reported by Yelverton p. 196.

(7) *Bessy* v. *Windham*, 51 E. C. L. 173 and note; *Doe* v. *Roberts*, 2 B. & Ald. 367, also p. 134; *Findley* v. *Cooley*, 1 Black. 263; *Sherk* v. *Endross*, 3 Watts & Sergt. 255.

(8) 22 Pick. 258; *Osborn* v. *Moss*, 7 Johns. 164.

(9) *Nellis* v. *Clark*, 20 Wend. 24; *Smith* v. *Hubbs*, 1 Fairf. 71.

contract. Its consequences standing upon *corrupt* consent will not be disturbed. A bargain to pay money as the wages of crime is never as a contract valid before or after payment although in spite of its invalidity, an action will not be given for money paid under it. Many of the cases would admit of the distinction between contracts performed and unperformed, but even this is not true of them all. In the leading case, *Hawes* v. *Loader*, the contract had not, it would seem, advanced so far as to prevent a party from defending upon the' ground of its illegality, if it had arisen from a corrupt origin that would avoid it between the parties. On the contrary the goods sued for were still in the vendors possession, having been only symbolically delivered by a pewter platter ; the illegality of the contract was plead, and the decision is not put upon the ground that the contract was executed, and though bad originally, cured by performance, but upon the ground that it was good between the parties and could be avoided by creditors *only*.

The cases cited in which fraudulent mortgages have been enforced and the cases in Massachusetts and Pennsylvania are inconsistent with the distinction claimed. On the whole we are satisfied that such contracts are left by statute valid between the parties. They are not governed in all respects by the rules applicable to prohibited contracts, for the plain reason that while the statute impliedly prohibits them, it limits the effect of the prohibition.

Whether this statute is, so far as it affects the validity of such contracts, merely declaratory of the common law, as it existed before the prohibition, is a question more interesting than practical. The statute was made a part of the body of English law at an early period—two centuries before Sir William Blackstone wrote his commentaries. The cases before the statute are meagre. Since then the policy of the statute and the principles of the common law have been so combined that it requires a close analysis to separate or distinguish them. Upon analogy and principle we are led to the belief that the common law left such contracts, as the statute does, valid and operative between the parties. In a late English case[10] brought upon a covinous contract not intended to defraud creditors the court

(10) *Philpotts* v. *Philpotts,* 1 Eng. L. & E. 339.

Carpenter *v.* McClure.

held the annuity recoverable though covenanted in derogation of law and in order to constitute fictitious interests in land to multiply voices and without expectation of payment. The principle that a defence cannot be predicated upon a fraud in which the defendant participates has been often recognized, and to a certain extent is correct. Where the fraud injures only himself it is doubtless sound. Because it may injure a creditor's opportunity to collect a debt would hardly be a sufficient reason to withdraw the contract from this rule and subject it to the other *ex turpi causa non oritur actio.* Independent of the statute, it can hardly be called a contract in contravention of public policy and from corrupt cause, except as all dishonest transactions are against public policy and corrupt. The subject matter of the contract is one which the parties may rightfully trade upon or give away. If fraud enters into the trade or gift, it is in the power of the person against whom the fraud is pointed, to avoid the trade or gift. The injury is pointed not at the public nor at an un-ascertained portion of the public, but at the fixed rights of persons certain to whom the common law affords protection, and into whose hands the statute gives the right to inflict punishment. That the contract is made void as to the creditor *only* has been thought to add to his protection and to be calculated to restrain such transactions. The colorable contract can only be avoided by the creditor's aid, and without it a dishonest debtor places himself in the power of his confederate whose exactions are not unusually more severe than a creditors. "The intention of the law," says PARSON, C. J., "in establishing this principle is effectually to prevent fraud by refusing to relieve any man or his heirs from the consequences of his own wrongful act."[11] We are therefore led to believe that without the statute, the contract is left by common law operative between the parties.

We are aware that in *Nellis* v. *Clark*, the court citing the case from Maine have made the distinction between executed and subsisting contracts under a statute very similar to ours, and have put their decision substantially upon the grounds which have been so well set forth in the exhaustive and learned argument of the defendant's counsel. With great respect for the able court, the majority of

(11) *Drinkwater* v. *Drinkwater*, 4 Mass. p. 353.

Tunbridge *v.* Eden.

whom concurred in that decision, we are unable to arrive at the same conclusion. So far as we are informed contracts, fraudulent as to creditors, have been uniformly treated by our courts as not becoming thereby void between the parties; and such is clearly the spirit of our reported cases. *Gifford* v. *Ford*, 5 Vt. 532; *Conner* v. *Carpenter*, 28 Vt. 240; *Boutwell* v. *McClure*, 30 Vt. 676.

Judgment affirmed.