HOWE AND FRENCH *v.* M. C. STEWART.

*Sale.  Intoxicating Liquors.  Stoppage in transitu.  Replevin.*

The right of stoppage *in transitu* cannot be enforced by suit in this state as to intoxicating liquors sold therein contrary to law, the statute having taken away all right of action for the recovery or possession thereof.

K., who was insolvent, ordered at Johnson, Vt., of M., the agent of H. & F., merchants at Boston, Mass.,, intoxicating liquors. Upon the receipt of the order from M., on the 21st day of January, 1867, H. & F. shipped the goods by railroad directed to K., Waterbury, Vt. After their arrival at their place of destination, they were put into the freight depot of the Vt. C. R. R. Co. On the 30th day of January, 1867, while the goods were in said depot, the charges for transportation not having been paid, and before K., or any one in his behalf, had exercised any control over them, they were attached by the defendant, a deputy sheriff, on a writ against K., as his property, but were not taken from the depot. On the 5th day of February, 1837, the attorney of the plaintiffs notified the agent of the R. R. Co., in charge of the depot, the goods being still there, of their claim to stop them *in transitu. Held*, that the right of stoppage, *in transitu*, as to the liquors, could not be enforced in this state. *Held*, that this species of property is a subject of sale, and liable to attachment.

THIS was an action of replevin heard upon the following agreed facts :

" The goods in question were spirituous liquors, not in the original packages in which they were imported into the United States.

" The goods were contracted for on the 15th day of January, A. D. 1867, at Johnson, by one Kirk, with one Morgan, agent of the plaintiffs, but had never been paid for by Kirk. Morgan forwarded

Howe et al. *v.* Stewart.

the order of Kirk to the plaintiffs, who were merchants, doing business at Boston, Massachusetts, about the 21st day of January, 1867.

" Upon receipt of the order from Morgan, the plaintiffs shipped the goods by railroad, directed " M. Kirk, Waterbury, Vt." They passed over the intervening railroads into the hands of the managers of the V. C. R. R., and came into the freight depot at Waterbury, where they were held by the R. R. Co., subject to their lien for freights.

" While they were at said depot, and before Kirk, or any one in his behalf, had had anything to do with them, they were attached by the defendant, a deputy sheriff, January 30th, 1867, by virtue of a writ of attachment, in favor of parties in St. Albans, against Kirk, as the property of Kirk. The goods were not taken out of the control of the R. R. Co. by the defendant. After the attachment, and while they were in the possession of the R. R. Co., subject to the attachment of the defendant, the attorney of the plaintiffs notified the agent of the R. R. Co. in charge of the depot in which they were held, of the plaintiffs' claim on the goods to stop them *in transitu.* This notice was given February 5th.

" The goods were demanded of the defendant, and subsequently replevied from him by the writ in this case.

" At the time of giving the order, Kirk was doing business at Johnson, as a retailer of spirituous liquors in connection with a hotel he was then keeping. He had no license to sell liquors under the laws of Vermont, but did have one by virtue of revenue laws of the general government.

" The goods in question were ordered by Kirk for the purpose of retailing them in his hotel at Johnson, which purpose was known to the plaintiffs at the time of filling the order.

" The sale of spirituous liquors is contrary to the laws of Massachusetts. The law of Massachusetts is like Vermont in that respect.

" Kirk was always insolvent in fact, but when he went to Johnson, in April or March, 1866, he got a reputation of being solvent, and obtained credit easily, and to a considerable extent, until September of the same year. From September to March or April following, Kirk was reputed insolvent, and lost the reputation of being solvent, and the credit he had the summer before.

" Morgan, the agent of the plaintiffs, supposed Kirk to be solvent at the time of taking the order. The first knowledge either Morgan or the plaintiffs had of Kirk's insolvency was subsequent to January 28th, 1867, when Kirk was sued by one McFarland, and his property was attached."

Upon the foregoing agreed statement of facts, at the September Term, 1867, of the county court, WILSON, J., presiding, rendered judgment, *pro forma,* for the plaintiffs.

Exceptions by the defendant.

*Dewey & Noble,* for the defendant.

If the plaintiffs prevail in this action, it must be *solely* upon their right of " stoppage in *transitu.*" They elected to base their claim upon that alone, and with that they must stand or fall.

To create the right of stoppage in *transitu,* certain things must combine. First, *the sale ;* second, *the vendee's insolvency ;* third, the goods must be in transit. All these pre-requisites concurring, the plaintiffs may recover, unless they are prohibited from maintaining their action by some positive statute.

I. Admitting the sale, was the insolvency such in character and the time of its occurrence as answers the requirement of the law? We insist it was not. Kirk was always insolvent, and for months before the sale was so reputed in the community in which he resided, and where the sale was made. The plaintiffs supposed Kirk to be solvent at the time of sale, but used no diligence to ascertain that fact.

The plaintiffs' knowledge or belief is not material to the question. The proper and only inquiry is, did the insolvency occur between the time of sale and the commencement of this suit? If not, then no right of stoppage in *transitu* existed. *Rogers* v. *Thomas,* 20 Conn. 64 ; 1 Smith's Lead. Cases, p. 539, note ; Smith's Mercantile Law, p. 540 ; *Fiese* v. *Wray,* 1 East. 93.

II. The transit was at an end ; the goods had arrived at their place of destination ; they had passed from the custody of the common carrier, and were in the possession of the railroad as warehouseman. *Blumenthal* v. *Brainerd et al.,* 38 Vt. 402.

In law, they had come to the constructive possession of the vendee. 1 Smith's Lead. Cases, p. 540 ; *Rowley* v. *Bigelow,* 12 Pick. 307 ; *Bolin* v. *Huffingle,* 1 Rawle, 9.

III. This action cannot be maintained, because it is expressly prohibited by sec. 32 of ch. 94 of the Gen. Stat. " No action of any kind shall be had or maintained in any court in this state for the recovery or possession of intoxicating liquor, or the value thereof, except such as is sold or purchased in accordance with the provisions of this act."

This liquor was sold by the plaintiffs and purchased by Kirk to be re-sold not in accordance with the provisions of this act.

And the sale was made in this state, hence it is brought directly within the operation of this statute, and the action cannot be supported. *Preston* v. *Drew,* 33 Me. 562 ; *Black* v. *McGilvery,* 38 Me. 283 ; *Nichols* v. *Valentine,* 36 Me. 327 ; *Lord* v. *Chadbourne,* 42 Me. 430 ; *McConihe & Co.* v. *McMann,* 27 Vt. 98 ; *Pinder* v. *Barlow,* 31 Vt. 529 ; *Harrison* v. *Nichols,* 31 Vt. 709.

Again, the plaintiffs were aiding Kirk to violate a statute of this state, with knowledge that it was his intention so to do, and no court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. Cowper, 341 ; *Worcester* v. *Eaton,* 11 Mass. 378 ; *March* v. *Abell,* 2 Bos. & Pul. 35 ; *Paul* v. *Frazier,* 3 Mass. 71 ; *Babcock* v. *Thompson,* 3 Pick. 446 ; *Gregg* v. *Wyman et al.,* 4 Cush. 322 ; *Spaulding* v. *Preston,* 21 Vt. 8.


*Benton & Wilson,* for the plaintiffs.

The right of stoppage in *transitu* is held not to be defeated by an attachment of or levy upon the goods while in their transit, and a demand of the goods by the vendor while in the hands of a levying or attaching officer is held a sufficient claim of them.

The transit is held to continue so long as the goods remain in the hands of the carrier as such, or so long as they remain in any place of deposit connected with their transmission. Chitty on Con. 378 ; 1 Smith's Leading Cases, 744 ; *Guilford et al.* v. *Smith et al.,* 30 Vt. 49.

Some of the later editions of text books, however, interpolate an additional rule, namely, that the insolvency of the vendee must have occurred after the sale. These will be all found based upon the authority of a single case, *Rogers* v. *Thomas,* 20 Conn. 53.

Upon examination of that case, however, it will be seen that the rule, even as claimed by the majority of the court, that at the time of sale there should be an actual solvency of the vendee, but only that between the sale and the stoppage of the goods there should have intervened some notable visible change in the circumstances of the vendee.

In this case the attachment of Kirk's property by McFarland, January 28th, and the public moving of that property, would seem to be sufficient even under that rule.

But that rule was only adopted by a divided court, and has against it, not only the authority of the court below, but one of the judges of the supreme court.

The dissenting opinion of WAITE, J., is better founded in principle and fortified by authorities than that of the majority of the court.

The rule in Vermont, so far as that point has been noticed, is in accordance with the dissenting opinion of HALL, J., in *Sawyer* v. *Joslin* ; Bennett's Justice, 49.

These goods were not legally subject to sale, and the plaintiffs might rescind the sale and retake the goods at any time, at least at any time before receiving pay for them. Gen. Stat. ch. 94, § 32.

The attaching creditors could have no more right than Kirk had, and as Kirk had no title to the liquors he had no attachable interest in them.

The plaintiff's title to these liquors was not acquired in contravention of our statute, so there is no objection to this action for their recovery. *Harrison* v. *Nichols et al.*, 31 Vt. 705.

The opinion of the court was delivered by

PROUT, J. Upon the facts, as shown by the agreed case, there was a complete and perfected sale of the liquors in question to Kirk. He acquired the title thereto upon its delivery to the carrier for transportation to Waterbury, its place of destination. *Bligh* v. *James*, 5 Allen, 106. As creditors with respect to its sale to Kirk, the plaintiffs set up the right to reclaim it in *transitu*, upon the ground that Kirk had become insolvent. We have no doubt but that this species of property is a subject of sale, and liable to attachment by a creditor of the owner, and in this instance upon the facts, by the creditors of Kirk, it having arrived at its place of destination. *Guilford et al.* v. *Smith et al.*, 30 Vt. 49. The statute relating to the traffic in intoxicating liquors, in none of its provisions, touches the title upon a sale, but its provisions are directed against its manufacture and sale by unlicensed persons, provides for its seizure, destruction or confiscation, and imposes a fine upon those guilty of a violation of its provisions. It was then Kirk's property, and while his, at its place of destination was attached by the defendant, as an officer, by virtue of legal pro-

cess against Kirk, and in favor of his creditors. The lien upon it, and thus acquired, cannot be defeated by this action. Were the liquors *in transitu*, when attached by the defendant, the Gen. Stat. ch. 94, § 32, in terms denies the plaintiffs any right of action for that purpose. It provides " that no action of any kind shall be had or maintained in any court of this state, for the recovery or possession of intoxicating liquor," &c. Again, those liquors were purchased, as the case shows, for the purpose of· retailing, in violation of the provisions of the statute referred to, and this was known by the plaintiffs when they sold and shipped them to Kirk. Under such circumstances the law will not aid the plaintiffs, thus implicated, in enforcing a claim confessedly arising in contravention of its mandates ; nor aid them in reclaiming the possession of the liquors when sold and held, with the deliberate intention of violating its provisions. *Territt* v. *Bartlett*, 21 Vt. 184 ; *Lord* v. *Chadbourne*, 42 Me. 440 ; *Treat* v. *Jones*, 28 Con. 334. These views render it unnecessary for us to consider the other question made in the case.

The judgment of the county court is reversed, and judgment that the property replevied be returned to the defendant, and that he recover one dollar damages and costs.