Jamie Jacobs *v.* Dwight A. Clark and Irene Clark.

May Term, 1942.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed October 6, 1942.

*Finn & Monti* for the plaintiff.

*H. C. Shurtleff* for the defendant.

BUTTLES, J. In this action of contract the plaintiff seeks to recover damages for loss of prospective profits resulting, it is alleged, from breach of the defendants' obligation to keep open for business during the times specified therein a certain gasoline filling station at East Montpelier, Vermont, and to offer for sale therein gasoline and other petroleum products obtained from the plaintiff. Trial by jury resulted in a verdict for the defendants and the case comes to this court before final judgment under the provisions of P. L. 2072 upon the defendants' exceptions to the granting of plaintiff's motion to set aside the verdict and order a new trial, and also upon the plaintiff's exceptions to the denial of that part of his motion which moved for the granting of a new trial upon the issue of damages only. The plaintiff's motion was based upon numerous grounds which are therein set out in much detail. The court ordered that ''the plaintiff's motion to set aside the verdict is granted, as a matter of discretion, on the ground that the verdict is against the weight of the evidence, and a new trial is ordered.''

The declaration is in two counts the first of which relies upon the claimed breach of certain conditions to be performed by the defendants as set forth in a certain quit claim deed (Plaintiff's Exhibit No. 1) dated July 20, 1937, from the plaintiff to the defendants. So far as here material the provisions of said deed were as follows:

> ''It is made a condition of this deed and in full adjustment of all differences and claims of the respective parties that the grantees, their heirs, administrators or assigns, shall not sell from said premises or suffer to be sold therefrom during the period of twenty-five (25) years from and after the 15th day of June, A.D. 1937 any gasoline, oils, greases or petroleum products, except such as shall be purchased from the said grantor, Jamie E. Jacobs, his heirs or assigns, without the written consent of the said grantor. And it is made a part

of such condition that the said grantor, his heirs or assigns, shall be ready and willing to furnish to the said grantees, their heirs or assigns, gasoline upon twenty-four (24) hours notice to deliver the same. And it is understood that at any time when the trucks of the grantor, his heirs or assigns, pass the premises of the grantees, the grantees may have such even amounts of gasoline as they desire, but if the grantors (sic) order for special trip or delivery from the grantee (sic) they shall order at least a six hundred (600) gallon lot. The said grantor for himself his heirs and assigns, agrees to keep the said grantees, their heirs or assigns, well supplied with gasoline, oils and greases suitable to supply the automobile trade. The gasoline is to be furnished at the current posted tank wagon price of the Standard Oil Company in this District, and the oil and greases to be furnished shall be at the same price said grantor furnishes like products to the other customers in this district.

And the said grantees, for themselves and their heirs, administrators and assigns, agree that as part of the consideration for this deed they shall keep between the hours of 7 A. M. and 9 P. M. on week days and between the hours of 8 A. M. and 8 P. M. on Sundays the premises ready for sale on said premises gasoline, oil, greases and petroleum products provided for them by the grantor herein.''

Then follow provisions as to the twenty-five year period to which we later refer, and to certain incidental matters not here material.

█ A question is raised as to the extent of the obligation imposed by the contract upon the defendants and the language used leaves some room for doubt on this point. Under these circumstances the instrument is open to construction, the prime object being to ascertain the intention of the parties. *Caverly-Gould Co.* v. *Springfield et al.*, 83 Vt. 396, 402, 76 Atl. 39; *Spaulding Admr.* v. *Mut. Life Ins. Co. of New York*, 96 Vt. 67, 80, 117 Atl. 376. The premises involved were adapted to the

sale of gasoline and petroleum products at retail; the defendants contracted not to sell therefrom any such products except those which were purchased from the plaintiff, and the plaintiff agreed to keep the defendants well supplied therewith under the conditions set forth. It seems clear therefore that the parties intended that the defendants should be bound not only to keep the station open for business during the times specified but also that during those times they should be required to sell the specified commodities to all persons who might apply for the same in course of business, at least to the full extent that it would be reasonably possible for them to do so. We so construe the contract.

Among other defenses relied upon the defendants pleaded illegality of the agreement upon which the plaintiff's first count is based, in that it required the sale of gasoline, oils, greases, and petroleum products on Sundays in violation of the statute. P. L. 8706, so far as here material, provides that ''a person shall not between twelve o'clock Saturday night and twelve o'clock the following Sunday night exercise any secular business or employment, except works of necessity and charity.* * * * A person who violates a provision of this section shall be fined not more than fifty dollars for each offense.''

The application of this section of the statute to circumstances somewhat similar to those here existing was considered by this Court in *State* v. *Corologos et al.*, 101 Vt. 300, 143 Atl. 284, 59 A. L. R. 1541. That case involved the sale on Sunday by the respondents to divers persons of ice cream, sundaes, milk shake, hot chocolate and lemon sour. It was contended that in the light of modern conditions and ways of life the word ''necessity'' should be given an interpretation broad enough to include the sale of these commodities. But after reviewing the history of legislation in Vermont restricting activities on Sunday and analysing the meaning of the word ''necessity'' as developed in various cases the Court refused to adopt this view. In reaching its conclusion the Court said: ''But assuming that under the present mode of living the commodities in question have attained the dignity of necessaries the same as meat, butter, sugar, eggs, etc., an indiscriminate sale of them on the Sabbath to all who desire to purchase, regardless of necessity, cannot be excused under this statute. No one has ever had the temerity to claim that the

butcher or grocer can keep open market on Sunday simply because the articles in which they deal constitute necessaries. Admitting that a reasonable necessity for any commodity may excuse a sale thereof on Sunday, nothing short of such necessity will excuse it. To hold otherwise would be to repeal, in effect, the express limitation imposed by the Legislature.'' No doubt some Sunday sales of gasoline or other commodities that might be made by these defendants might be legal, but the agreement, as we construe it, required the indiscriminate sale of such commodities during the stated hours on Sunday, regardless of whether there was any reasonable necessity for the purchase. That is, the defendants were required to make illegal as well as legal sales.

 With respect to an entire, as distinguished from a severable, contract it has been said that no court will allow itself to be made the instrument of enforcing obligations alleged to arise out of an agreement or transaction which is illegal. In other words no action can be based upon an illegal agreement. 12 Am. Jur. 713, Sec. 209, Contracts. This Court has held that a contract which has for its object, or which contemplates, any act prohibited by express statute or the commission of which incurs a penalty is as much illegal and void as if the statute in express terms so declared, and that a litigant cannot prevail in a suit based thereon. *Ovitt* v. *Smith*, 68 Vt. 35, 38, 33 Atl. 769, 35 L. R. A. 223; *Territt* v. *Bartlett*, 21 Vt. 184, 189; *Spaulding* v. *Preston*, 21 Vt. 9, 15; *Smith and Wood* v. *Allen and Stafford*, 23 Vt. 298, 300; *Carpenter* v. *McClure*, 39 Vt. 9, 12; *Howe and French* v. *Stewart*, 40 Vt. 145, 150; *Mound* v. *Barker*, 71 Vt. 253, 254, 44 Atl. 346, 76 Am. St. Rep. 767.

 Where the prohibition of the statute affects only a part of the agreement the rule has been declared to be that if any part of the agreement is valid, it will avail *pro tanto*, though another part of it may be prohibited by statute, provided the statute does not, either expressly or by necessary implication, render the whole void and provided the sound part can be separated from the unsound and enforced without injustice to the defendant. 12 Am. Jur. 738, Contracts Sec. 220; *Rand* v. *Mather*, 11 Cush. 1, 7, 59 Am. Dec. 131; *Smilanski* v. *Mandel*, 254 Mich. 575, 582, 236 N. W. 866. The prevailing rule is thus stated in A. L. I.

Restatement of Contracts 1125, Sec. 607 a: "If the legal portion of a bilateral bargain is severable, legal promises on two sides being apportioned to one another and the illegal portion of the bargain does not go to its essence the legal part may be enforced. If the illegal portion of the bargain is essential the difficulty in the way of recovery is insuperable. It is a violation of the terms of the bargain to compel either party to perform a fraction thereof or to be subjected to damages for so doing." Our own cases seem to be in accord with this rule. See *Bancroft* v. *Dumas*, 21 Vt. 456; *McConihe & Co.* v. *McMann*, 27 Vt. 95; *Shaw* v. *Carpenter*, 54 Vt. 155, 164; *Osgood* v. *C. V. Ry. Co.* 77 Vt. 334, 341, 60 Atl. 137, 70 L. R. A. 930.

But it is unnecessary to determine whether this contract might or might not be considered of a severable nature. The plaintiff was relying upon the entire contract. In the trial of the case there was no basis upon which the legal part could be separated from the illegal part. As previously stated the only damages claimed were for loss of prospective profits on commodities that might have been sold under the contract. Obviously the volume of such anticipated sales was a necessary element in computing such profits. There was evidence as to the amount of gasoline that had been furnished to this station by the plaintiff during the years 1936 to 1939 inclusive, and as to the amount that had been furnished from another source during the year 1932, five years prior to the inception of this contract. There was also some evidence from expert witnesses as to the volume of sales that would probably have been made during the life of the contract in suit if its conditions had been fully complied with, which evidence was based on the record of gasoline furnished during the years referred to, and on such factors as general conditions affecting traffic, variations in competition and the location of this station in relation to that of its competitors. But there was no evidence whatever tending to show what part of such sales would have been made on other days than Sunday, or what part of sales made on Sunday, if any, would have been legal sales. Any finding by the jury as to the probable amount of legal sales would necessarily have been based upon speculation and conjecture, and conjecture is no proof in him who is bound to make proof. *McKirryher* v. *Yager*, 112 Vt. 336, 341, 24 Atl.

(2d) 331; *Wellman* v. *Wales,* 97 Vt. 245, 255, 122 Atl. 659; *Gilman* v. *Cent. Vt. Ry. Co.,* 93 Vt. 340, 349, 107 Atl. 122, 16 A. L. R. 1102; *Cummings, Admr.* v. *Town of Cambridge,* 93 Vt. 349, 352, 107 Atl. 114.

Under the second count of his declaration the plaintiff seeks recovery by reason of the alleged breach of certain conditions contained in a quit claim deed from Filling Station Supply Co. Inc. to E. J. Matson dated April 10, 1929, which is plaintiff's Exhibit No. 6. This deed apparently conveyed the same property as Plaintiff's Exhibit No. 1 which we have hereinbefore considered, and it is claimed that the plaintiff herein is the successor in interest of the grantor in Plaintiff's Exhibit 6 and that the defendants are the successors of the grantees therein. But whatever interest the plaintiff may have had in the conditions of plaintiff's Exhibit 6 came to him by virtue of Plaintiff's Exhibit 4 which is a quit claim deed from Filling Station Supply Co. Inc. to him dated June 15, 1935. Exhibit No. 1, which was given by the plaintiff to the defendant two years later, recites, as already appears, that it is given in full adjustment of all differences and claims of the respective parties. It quit-claims to the defendants all right, title and interest of the plaintiff except as therein set forth and we find nothing therein in the nature of a reservation of the benefits of conditions contained in any prior deeds except a reference to a deed dated May 3, 1933, from Peoples Nat'l Bank of Barre by its Conservator to Wesley D. and Emma A. Blodgett. This reference provides in effect that the twenty-five year restriction above referred to shall include the unexpired portion of a ten year period mentioned in the Blodgett deed. If by the language used it is intended to reserve the benefit of any other conditions contained in that deed it is sufficient to say that no such conditions are set out in Exhibit No. 1, the deed from the Bank to Blodgetts is not in evidence, there is no evidence as to what conditions were set forth therein, or that those conditions, if any, were identical with those stated in Plaintiff's Exhibit 6 upon which the plaintiff seeks to rely.

■ It is clear that there could be no recovery under the second count of the declaration and that the plaintiff failed to make proof of an essential element of his case under the first count. In this situation a verdict for the defendants was imperative, and

in setting aside such a verdict as a matter of discretion the court abused its discretion since it was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Stone* v. *Briggs,* 112 Vt. 410, 415, 26 Atl. (2d) 828, 831; *Houran, Admr.* v. *Preferred Accident Ins. Co. of N. Y.,* 109 Vt. 258, 270, 195 Atl. 253; *Temple* v. *Atwood,* 99 Vt. 434, 435, 135 Atl. 591, 592.

The conclusion reached makes it unnecessary to consider the plaintiff's exceptions to the partial denial of his motion.

*Judgment reversed and judgment for the defendants to recover their costs.*