WILLIAM G. SHAW *v.* JOHN W. CARPENTER AND OTHERS.

[IN CHANCERY.]

*Consideration, part Legal, part Illegal. Mortgage.*

Notes were given, secured by mortgage, the consideration being the good will, fixtures and stock of a business, the two latter specified in inventories upon which each article with its price was separately carried out. A part of the stock sold and specified in the inventory was lager beer, cider, ale, porter and alcohol. On petition to foreclose by an assignee for value and without notice of the notes and mortgage. *Held,*

1. That the sale of the cider was legal, because not made in a "place of public resort" within the meaning of the statute ; and that whether it is such place is a question of fact to be found by the court below, upon the evidence.

2. That the sale of the lager beer was legal, because made before the statute of 1878 prohibiting it was passed, the master finding from the evidence that it was not intoxicating.

3. That the sale of the ale, porter and alcohol though damaged and unsalable, was illegal.

4. That, the articles illegally sold and their value being certainly ascertainable, the contract is divisible, and mortgage may be foreclosed for the amount of the legal sales.

5. R. L. s. 3800—sale of cider—construed.

PETITION to foreclose a mortgage. Heard on petition, answer, general replication, and the report of a special master, at the September Term, 1880, Chittenden County, TAFT, Chancellor. The court ordered, *pro forma*, that a decree of foreclosure be rendered against the defendants, for $51.71. The master found the following :

Said mortgage was given by the defendants, except Rodney and Mary Howard, subsequent mortgagees, on the 24th day of July, 1872, to Benjamin D. Peterson, securing the sum of $3,337.81, specified in four promissory notes of even date—the first being for the sum of $937.81, and the others for $800 each, signed by the defendant, J. W. Carpenter, and payable to said Peterson or order with interest annually, in one, two, three and four years after date.

The last of said notes fell due on the 24th day of July, 1876, and alone remained unpaid at the time of the commencement of foreclosure proceedings. . . . ,

Said note amounted on the 24th day of December, 1880, to the sum of $1,094.80.

Said notes and mortgage were given for, and to secure the purchase price of certain property sold on the same day by Peterson to Carpenter, set forth in a bill of sale executed by Peterson, which was, in part, as follows :

"In consideration of $3,387.81 received of J. W. Carpenter, I, Benj. D. Peterson do hereby sell, transfer and assign unto said Carpenter the good will of a certain business for bottling cider, soda and mineral waters, now carried on by me in Burlington, together with all the stock, tools, bottles, machinery and fixtures, now in use in said business, as specified in certain inventories hereto attached, and I agree to deliver to said Carpenter the gross amount of property described in said inventories, which said inventories are signed with my name."

This assignment was drawn by the petitioner acting as the attorney for said Peterson, who brought the inventories to the office of the petitioner for that purpose.

I find that upon the execution of the assignment, that instrument and the inventories were pinned together by the petitioner, but that he neither read nor examined said inventories, nor was aware of their contents any further than was indicated by the assignment.

Upon these inventories the various articles sold were separately carried out with a separate price for each item, the footings of the several pages of the inventories being brought forward upon the last page where the aggregate correctly appears at the sum of $3,221.81. To this was added an item of $116, without stating what the same was for, and thereby increasing the amount to $3,337.81, the amount named in the assignment and mortgage.

From said inventories so attached to said assignment it appears that a portion of the property so sold to Carpenter, and forming a part of the consideration of said notes, consisted of cider, lager beer, ale and porter (the bottling of which was likewise a part of said business), together with one gallon of alcohol. Said sale was made in Burlington, Vermont, and neither Peterson nor Carpenter were agents for the sale of liquor under the statute.

On the 28th day of October, 1872, and before the maturity of any of said notes, said Peterson sold them, together with said mortgage, to the petitioner, who purchased them in good faith for an adequate consideration (paying therefor the sum of $3,239.65, being the agreed value between them), believing them to be fully based on a valid and legal consideration, and not suspecting that any illegal element entered into the consideration. Said notes were endorsed by Peterson, upon said transfer, waiving demand and notice.

I find that shortly after the sale of said business and property to Carpenter, and before the petitioner had bought the notes, he, said Carpenter, claimed to said Peterson, that said cider, ale and porter were sour, damaged and unsalable, and that the damage to him in consequence was $500; that said claim was the subject-matter of several interviews between them until it was finally settled on the 24th day of April, 1873, by the payment by Peterson to Carpenter of the sum of $200, in full settlement for such damage. This adjustment between Carpenter and Peterson was made after said petitioner had purchased the notes and mortgage, was not endorsed upon said notes nor applied in reduction of them; and was based wholly upon the deteriorated condition of said goods; said sum being agreed upon as a reimbursement of the inventory prices paid therefor, exclusive of the prices paid for the bottles and casks containing the same. No claim was set up or repayment made on account of any illegality of consideration in the purchase price of said property. . . .

Of the property sold by Peterson to Carpenter and forming a part of the consideration of said notes, I find there were the following goods in kind and amount : lager beer, $23.94; cider, $422; ale, $209.38; porter,

$6.72; alcohol, $2.25. There was much controversy as to what portion and how much of the said items was " intoxicating liquor " within the meaning of chapter 94.

The master finds from the evidence as a matter of fact that the lager beer so sold to Carpenter was not an intoxicating drink.

The cider in question was an intoxicating drink, but whether the sale was illegal under the provisions of chapter 94 is submitted to the court upon the following facts found:

This establishment was for the bottling of cider, soda and other prepared beverages for the market, having an office and office equipments connected therewith. It was a sort of warehouse, where the cider and other drinks were prepared and stored in bulk, and where the bottles and machinery and appliances for bottling and transportation were kept.

The cider was there put up in bottles, some of it being prepared at the proper stage, by adding a stated quantity of fish sounds jelly to arrest fermentation, and when clear was bottled in champagne bottles; all for the market. The addition of this preparation to the cider did not, however, change the essential nature or quality of the drink. There were no conveniences for selling any drinks to be drank on the premises; and none were so sold or drank. The business consisted for the most part in selling these drinks, including the cider, at wholesale to dealers living out of town, orders being received therefor by mail, and being filled by delivering the same, packed, at the express office or depot for transportation.

Some of said goods were sold in town, there being a delivery wagon belonging to and connected with said business; but I find that such sales were made by soliciting and receiving orders at wholesale therefor from customers at their places of business, where said orders were delivered by the vendor or his messenger; and that people did not resort to said establishment for the purpose of procuring or purchasing said goods, or generally for any purpose.

Whether the sale of the ale and porter was contrary to the provisions of the statute is submitted to the court upon the following facts found:

The ale was in a damaged condition when sold by Peterson to Carpenter, and had deteriorated into what is sometimes called " stock ale," and had become and was sour, unpalatable, not salable or marketable.

The porter was also in a similar condition, but I further find that neither of these had lost any of their intoxicating properties in the change, —both of which I find are intoxicating liquors in their natural condition.

As to the alcohol. I find that the same was legitimately on hand and used by Peterson only for the manufacture of syrups for soda (a nonintoxicating drink prepared at the establishment), it being necessary to use alcohol to cut or dissolve the oils used in making the requisite syrups, and that the same was transferred to Carpenter as a part of the necessary materials for continuing said business.

*M. R. Tyler*, for the defendants.

The orator needs no aid from the court of equity, as his note was endorsed, and he has his remedy against the endorser. *Bowyer* v. *Bampton*, 2 Stra. 1153 ; Edwards on Bills & N. 337, 352 ; Chitty on Bills, 86. The sale of the cider, being at a *place of public resort* was illegal ; also, of the ale, alcohol and porter.

The partial illegality of the consideration of the note vitiates the whole note. There is a distinction between want or failure, and illegality of consideration. Want or failure of consideration in part would affect a promise only *pro tanto*, but partial illegality destroys it *in toto*. 14 Gray. 522; 38 Mich. 278; 39 Ga. 85; 8 Mass. 51; Chitty on Con. 60, 61, 426, 664, n., 692.

The contract was entire and for one gross sum; and whether the consideration of the promise be entire or not, the promise itself unquestionably is, and if any part of the entire promise is illegal, the whole promise is void. The consideration of the note was entire and cannot be separated. Chitty on Cont. cited above; *Crawford* v. *Morrell*, 8 Johns. R. 253; *Loomis* v. *Newhall*, 15 Pick. 167; *Bridge et al.* v. *Hubbard*, 15 Mass. 96; *Kendall* v. *Robertson*, 12 Cush. 56; *Bowen* v. *Buck*, 28 Vt. 308; *Cobb* v. *Cowdery*, 40 Vt. 25; *Hinman* v. *Woodruff*, 11 Vt. 592; *Deering* v. *Chapman*, 22 Me. 488; *Scott* v. *Gilmore*, 3 Taunton, 226; *Carlton* v. *Whitcher*, 5 N. H. 196; *Hindes* v. *Chamberlain*, 6 N. H. 225; Chitty's Bills, p. 87; Parson's on Con., vol. 2, p. 19; *Hooker* v. *DePalos*, 28 Ohio St. 251.

The note and security given therefor, being absolutely void in their inception, under the act of 1852, even a *bona fide* holder cannot recover thereon. Chitty on Bills, 83, 88; Dougl. 735; 2 Stra. 11, 53; 1 Stark, 385; 47 Vt. 702.

*William G. Shaw,* for the orator.

The petitioner is a *bona fide* holder of the note; and, as such, he is entitled to all the benefits which the law confers on such holders of negotiable instruments. 1 Dan. Nego. Instruments, s. 807; 32 Vt. 828; *Powers* v. *Ball*, 27 Vt. 662; *Clark* v. *Pease*, 41 N. H. 414; 9 Gray, 329. Among those benefits is the right to recover of the maker of such a note the full amount thereof without regard to the partial or total failure or illegality of the consideration as between the original parties, *unless by some statute all securities given for such consideration are declared to be void, or some equivalent statutory language is used.*

I respectfully submit that *Streit & Co.* v. *Sanborn*, 47 Vt. 702, is not sustained by authority. In the case of such *bona fide* holder

the action is not for the *value of the liquor*, it is not for the consideration for which the note was given, but is an action on the *security itself*, independent and regardless of the consideration. A negotiable note without any consideration is just as valid in the hands of such a holder as if it was given on a perfect and complete consideration. 12 Cush. 156; Chitty on Con. 614 and cases cited.

Why is it not just that the petitioner should recover to the same extent that Peterson could in general assumpsit?

And in that mode of adjustment, or any other, why may not the plaintiff claim that the prior payment by Carpenter on that sale of the amount of the first three notes, has covered all the illegal part of the goods which in any event is less than any one of the notes, and that the illegally sold goods having been paid for, the note remaining unpaid represents only legally sold goods?

Or, if that is not correct, surely the illegal consideration should be distributed *pro rata* among all the notes, and the last note should bear only its proportional part thereof.

The mortgage is valid whenever, and in whose soever hands, the the note is valid. *Taylor* v. *Page*, 6 Allen, 86.

The sale of the cider was legal. *State* v. *Pratt*, 34 Vt. 323.

The opinion of the court was delivered by

ROYCE, Ch. J. This cause was heard upon the report of a special master appointed to ascertain and report the amount due on the mortgage described in the petition.

It appears from the report that on the 24th day of July, 1872, one Benj. D. Peterson, who was then engaged in the business of bottling cider, soda, and mineral waters, at the city of Burlington, sold the good will of the business and all his stock,—tools, bottles, machinery, and fixtures, then in use by him in said business, as specified in certain inventories, which were signed by the said Peterson, to the defendant Carpenter.

Upon said inventories the various articles sold were separately carried out, with a separate price for each item. The footings of the separate pages were brought forward upon the last page, where the aggregate correctly appeared of the sum $3221.81. To this . amount an item of $116 was added, which was included in the

note first due. It is not found what the consideration for that item was. The good will of the business was included in the sale; and was not estimated in the inventory. It is probable that it may have been estimated by the parties at that time. For the amount so ascertained the defendant Carpenter executed four promissory notes payable to said Peterson, or order, and secured the same by the mortgage sought to be forclosed. Said notes have all been paid, but the last, which was for $800; and that fell due on the 24th of July, 1876. The interest on that note was paid to the 24th of July, 1876.

On the 28th day of October, 1872, and before the maturity of any of said notes, Peterson sold them and the mortgage for an adequate consideration to the petitioner ; the petitioner, then believing the notes to be based on a valid and legal consideration, and not suspecting that any illegal element entered into the consideration.

Of the property sold by Peterson to Carpenter, and which formed a part of the consideration of said notes, the master has found there were the following goods, in kind and amount : Lager beer, $23.94; Cider, $422; Ale, $209.38; Porter, $6.72; Alcohol, $2.25.

The defendant Carpenter claims that if any part of the consideration for the notes was illegal, they are void ; that no recovery could be had upon them ; and that a court of equity cannot grant any relief to the petitioner.

The first inquiry is, was the sale of any of the articles above enumerated prohibited by law ? It is found that the lager beer was not an intoxicating drink, and its sale was not then prohibited, the act forbidding its sale having been passed in 1878. The sale of the cider was not illegal, unless the place where it was sold was a place of public resort. The question as to what constitutes a place of public resort, under s. 3800 of R. L., does not appear to have been before this court, except in the case of *State* v. *Pratt*, 34th Vt. 323 ; and in that it was submitted to the jury to find from the evidence whether the place where it was shown the intoxicating liquor was furnished was a place of public resort or not. The sale of spirituous or intoxicating liquor, or of mixed

liquor, of which a part is spirituous or intoxicating, is prohibited generally; its sale is made illegal, without reference to the place where the sale is made. The sale of cider is not generally prohibited, and its sale is only made illegal when it is sold at or in a victualling house, tavern, grocery, shop, or cellar, or *other place of public resort*, or at any place to an habitual drunkard.

If the defendant would avoid payment for the cider, he must show that the sale was an illegal sale, that it was prohibited by law. The only ground upon which it is claimed the sale was illegal is, that it was made at or in a place of public resort. The master has not found that the sale was made at or in the establishment of Peterson, which it is claimed was a place of public resort; or where it, in fact, was made; or that the cider was in or about that establishment; or where it was, when sold. So that, from what appears in the report, the court cannot hold, as matter of law, conceding that the establishment of Peterson was a place of public resort, that the sale of the cider was illegal. But we do not think the establishment of Peterson was a place of public resort, or, rather, such a place as rendered the sale of the cider illegal by reason of its having been there made.

The words, " place of public resort," in the statute, are used in connection with the victualling house, tavern, grocery, shop, and cellar, in which the selling or furnishing of cider is absolutely prohibited. We all understand that such places are resorted to, to a greater or less extent; and hence they become, and are known as, places of public resort. But in the ascertainment of what is meant by " other places of public resort" we have to inquire as to what places were intended to come within that description. The legislature did not intend to prohibit the sale of cider as an article of commerce. This is evident from the fact that its manufacture and sale are not generally prohibited. Its sale is only prohibited in particular places, and to an habitual drunkard. And whether a place is a place of public resort must depend upon the evidence which gives character to the place.

In order to constitute it such a place as would render a sale of cider made at it illegal, it must appear that it was a place resorted to by the public for the purchase of cider. The fact that it is not

11

drank at the place where it is obtained would not probably be regarded as controlling, if it appears that those who want it can and will be supplied at such place. The design of the legislature was to remove the temptation to its use, by putting it out of the power of those addicted to its use to obtain it, to use as a beverage at the places enumerated in the statute.

This establishment was for the bottling of cider and other beverages for the market. It was a sort of warehouse, where cider and other drinks were prepared and stored in bulk; and the cider was put up in bottles for the market, and, when thus prepared was mostly sold at wholesale to dealers out of town, on orders received by mail. Some was sold to wholesale dealers in town, upon orders. There were no conveniences for selling it to be drank on the premises, and none was so sold or drank. And it was not a place that people resorted to for the purpose of buying cider, or that was generally resorted to for any purpose. This, in our judgment, does not show that the establishment was such a place of public resort as was intended by the statute.

The ale, porter, and alcohol were intoxicating liquors, and, notwithstanding the ale and porter were in a damaged condition and unpalatable, as long as their intoxicating properties remained, it was illegal to sell them. The sale of the alcohol was prohibited; and the belief of Peterson that it was to be used for a legitimate and proper purpose, connected with the manufacture of a non-intoxicating drink, did not make the sale legal. *State* v. *Pratt*, 34 Vt. 323.

The sale of the ale, porter, and alcohol being illegal, the consideration for the notes, as far as the value of those articles went to make up the amount for which the notes were given, was an illegal consideration.

The important question in the case is, as to the effect that such partial illegality of consideration is to have upon the rights of the parties. *Robinson* v. *Bland*, administratrix of Sir John BLAND, 2 Burr. 1077, has always been regarded as a leading case; and opinions were given in it by Lord MANSFIELD and Justices DENISON and WILMOT. The declaration contained three counts; the first, upon a bill of exchange; the second, for money

lent and advanced ; and the third, for money had and received. A verdict was found for the plaintiff for £672, the amount of the bill of exchange. It was found that the consideration for the bill of exchange was £300, lent by the plaintiff to Sir John BLAND at the time and place of play ; and £372 were lost at the same time and place by Sir John BLAND to the plaintiff at play. It was held that the £372, part of the consideration for the bill, being for money lost at play, could not be recovered, all such securities being void under the statute ; and that a part of the consideration for the bill being illegal, no recovery could be had under the first count ; that the plaintiff was entitled to the £300 lent, and was allowed to recover it, under the count for money lent and advanced.

Judge DENISON says there is a distinction between the contract and security. If part of the contract arises upon a good consideration, and part of it upon a bad one, it is divisible. But it is otherwise as to the security. That, being entire, is bad for the whole.

Judge WILMOT : " As to contracts being good and the security void,—the contracts may certainly be good, though the security be void."

The same principle as to such a security being void was enunciated in *Scott* v. *Gilmore*, 3 Taunt. 226. See also *Yundt* v. *Roberts*, 5 Serg. and Rawle, 139 ; *Phillips* v. *Cockayne*, 3 Campbell, 119 ; *Edgell* v. *Stanford*, 6 Vt. 551. These two first cases have oftenest been quoted as authority for the rule that has generally prevailed in the English and American courts, that where a part of the consideration for a security is illegal the whole security is void.

The cases referred to by counsel for defendant were all cases where attempts were made to enforce such securities, and the cases of *Hinesburgh* v. *Sumner*, 9 Vt. 23, and *Woodruff* v. *Hinman*, 11 Vt. 592, were of the same kind. In none of these cases was the court called upon to decide what the effect of holding the security void would be upon the original contract, where that was bad, in part, upon a good and legal consideration.

In *Carlton* v. *Woods*, 28 N. H. 290, the question was pre-

sented.    The declaration, in that case, contained counts upon several promissory notes, and a count for goods sold and delivered.    The plaintiff agreed to sell the defendant a stock of goods and groceries at cost and freight.    A schedule of the articles was made, and the cost of each.    The sum total of the cost of all the articles was divided into several parts, and the notes declared upon were given for the same.    Among the articles so sold were some spirituous liquors illegally sold, the price of which formed a part of the consideration for the notes.    A verdict was taken for the plaintiff, for the cost of the goods remaining unpaid, except the spirituous liquors ;  and judgment was to be rendered on the verdict, or it was to be set aside, as the opinion of the court should be.    It was held that the counts upon the notes were not maintainable ;  that the consideration of the several notes was, in part, illegal, and, therefore, no recovery could be had upon them ;  that the legal effect of the contract was, that each article was to be valued separately, and that the sale and delivery of each article formed the consideration for the promise to pay for it ; that the contract was divisible ;  and, while the separate value of the articles sold could be ascertained, as fixed by the parties, the principle is not readily seen, which would defeat the right of recovery for the stipulated price of that portion, the sale of which was legal ;  and judgment was rendered on the verdict.    The same was substantially held in *Walker* v. *Lovell*, in the same volume, 138.    The law does not favor any party in evading payment, while he retains the consideration.

The notes which were given for the good will and property sold to Carpenter were all infected with illegality, and the defence of illegality attached to all of them ;  so that, if what is now claimed as a defence can be allowed, if proceedings had been instituted to compel payment before anything had been paid, the entire claim could have been defeated,  notwithstanding Carpenter had received, and was in the enjoyment of the property, upon the ground that the portion of the property above enumerated was illegally sold.    It has somewhere been said, that the declaring such a security void was to be regarded as a punishment of the party for having made an illegal contract.

The loss of the property illegally sold would generally be considered a sufficient punishment, certainly, when the sale was only *malum prohibitum*, and no wrongful intention appears. But a court of equity could never hold that one might be deprived of his entire fortune, because, in the consideration agreed to be paid for it, there was intermingled some article the sale of which was prohibited.

We regard the case of *Carlton* v. *Woods, supra,* as sound law and well sustained by authority. Its application works out just and equitable results, and we shall apply the principles there enunciated in the decision of this case.

Peterson could have recovered against Carpenter in an action of assumpsit, for all that was sold to him, except the ale, porter, and alcohol. The mortgage would be treated as security for the debt due from Carpenter, on account of the property legally sold to him. Peterson might have foreclosed the mortgage, and thus have compelled payment of the debt.

The petitioner, by his purchase of the notes and mortgage, acquired all the rights, legal and equitable, of Peterson. He could maintain a suit at law for his own benefit, in the name of Peterson; or a petition in equity, as assignee of the mortgage, to foreclose it. And in the disposition of such a petition it is the duty of a court of equity, which has been said to be the great sanctuary of plain dealing and honesty, to compel the payment of that portion of the debt that was secured by it, that was legally and fairly contracted.

The decree of the Court of Chancery is reversed and cause remanded, with mandate that a decree be entered for the petitioner for the amount due on the note for $800 described in the petition, with interest after deducting therefrom the sums of $209.38, $6.72, and $2.25, being for the ale, porter, and alcohol illegally sold,— as of the date of the note. If the amount due cannot be ascertained from the computations made by the master, it is to be ascertained in such manner as the court may direct.

Dissenting opinion was delivered by

Ross, J. I am unable to concur in the decision of the court in this case. On the facts found by the master, it may be question-

able whether the sale of the cider was illegal, within the exact terms and language of the statute. However, when a man establishes a business for the bottling and sale of cider and other fermented drinks, in a city, like Burlington, has a warehouse for storing, manufacturing, bottling, and vending the same, and keeps an office, he so far makes the place of his business a place of public resort for the sale of cider, although the vending is carried on by solicitation of orders at the houses and places of business of his customers, and the delivery of the bottled cider is at the latter places, that in my opinion, it comes within the spirit and scope of the statute, and without any forced construction, within its language. But I do not regard this point very material; and should not on this ground have placed my dissent upon record. A part of the consideration of the note being illegal, the note is void and no action can be maintained thereon to enforce its collection. To the cases cited by the court, in the main opinion, may be added *Cobb* v. *Cowdery et al.*, 40 Vt. 25 ; *Bowen* v. *Buck*, 28 Vt. 308. In *Cobb* v. *Cowdery*, *supra*, the distinction is taken between a consideration, in part void, and a consideration in part illegal. The note failing, what is there left for the mortgage to stand upon ? The mortgage is but an incident to the debt it secures. On the authorities cited by the court in support of its decision, as well as all the reasoning, partial illegality of consideration avoids all securities. The note was a security, or evidence of the debt, of a higher nature than the original contract. The latter was merged in the note. The note in suit, and all the notes secured by the mortgage, were tainted by illegal consideration entering into them. Each note being an entire contract of itself, no division of the legal from the illegal, part of the consideration could be effected. Courts established for the enforcement of law, will not give aid, or countenance to anything illegal ; nor, where the illegal is commingled with the legal, will they aid in separating, or purging the former from the latter. Their proper function is to establish and enforce the legal and to condemn and punish the illegal. Where a part, however small—of the consideration of an entire contract is illegal, the whole contract is tainted, and courts will not compel its performance. *Collins* v. *Blanton*, 2 Wils. 341, is a leading case on

this subject, in which, the Lord Chief Justice WILMOT uses the quaint but forcible, and often quoted language: " *You shall not stipulate for iniquity ;* all writers upon our law agree in this, no polluted hand shall touch the pure fountains of justice ; whoever is a party to an unlawful contract, if he hath once paid the money stipulated to be paid in pursuance thereof, he shall not have the help of a court to fetch it back again ; you shall not have a right of action when you come into a court of justice in this unclean manner to recover it back. *Procul! O procul este, profani.*" The mortgage is an entire contract. Its consideration was the notes, the payment of which was therein secured ; every one of which was tainted with an illegal consideration in part. It was not given to secure the performance by Carpenter of his contract with Peterson, of July 24, 1872, by which he purchased his business and stock in trade, but was given solely to secure the payment of the notes which were executed in payment of that purchase. *If the action were upon the notes, it is conceded that no recovery could be had ; because every one of them is tainted with illegal consideration. The illegal could not be separated from the legal portion of the consideration ; and an enforcement of the collection of the notes would be the enforcement of an illegal contract. How does it differ when the mortgage, which is but an incident to the notes, is allowed to be foreclosed ? Is it not an enforcement of an illegal contract ? To foreclose the mortgage for the legal part of the consideration must not the illegal portion be ascertained and rejected ; which the majority hold could not be done, if the action were upon the notes ? *What is the foreclosure but an action upon the notes described in its condition ? and to ascertain the legal part of the consideration of the mortgage must not the notes be treated as divisible ? I can see no other means of separating the legal from the illegal part of its consideration. In *Vinton* v. *King*, 4 Allen, 562, METCALF, J., says : " In an action brought by a mortgagee against his mortgagor, on a mortgage given to secure payment of a note, the defendant may show the same matters in defence (the Statute of Limitations excepted, 19 Pick. 535,) which he might show in defence of an action on the note." I am not aware of any exception to the rule

thus stated, nor of any case to the contrary. I am not unaware that Mr. Jones in his work on mortgages, s. 620, says : " The mortgage may be upheld for such part of the consideration as was *free from the taint of illegality* when the consideration is made up of several distinct transactions, some of which are legal, and others are not, and the one can be separated with certainty from the other." The cases he cites support this doctrine. *Feldman* v. *Gambel*, 26 N. J. Eq. 494 ; *Williams* v. *Fitzhugh*, 37 N. Y. 444 ; *McCraney* v. *Alden*, 46 Barb. (N. Y.) 272 ; *Cook* v. *Barnes*, 36 N. Y. 520.

It may well be admitted that a mortgage, given to secure the payment of several notes, or debts, a part of which arose out of wholly legal transactions, and a part of which were tainted with illegality, could be enforced to compel the payment of the former alone. In such a case the orator would not have to show in evidence, nor rely upon anything illegal, in maintaining his suit. In the language of GIBBS, Ch. J., in *Simpson* v. *Bloss*, 7 Taunt. 246, in speaking of *Faikney* v. *Reynous*, 4 Burr. 2069, and *Petrie* v. *Hannay*, 3 Term Rep. 418 : " The ground of their decision was, that the plaintiffs required no aid from the illegal transaction to establish their case." This, as I understand, is the test most frequently applied in this class of cases. If the plaintiff can show a good cause of action, independent of, and without bringing into the case anything illegal, either by way of proof or otherwise, he may maintain his action therefor. If, on the other hand, he derives any aid from the illegal part of the transaction, by being obliged to show it to make out the legal part, or otherwise, he must fail. The court will not allow the unclean thing within the temple of justice. In the foreclosure of his mortgage the orator was bound to show in proof his notes, every one of which was tainted with illegality ; and for that reason the notes all fall, and the mortgage given to secure them alone, falls with them. This point my brethren have not deemed worthy of their attention, nor alluded to. But if I am in error on this point, I cannot concur with my associates in holding that the original contract is divisible. It is in writing, and amenable to the rules of evidence which forbid varying, lessening or enlarging such contracts by parol tes-

timony.  It is in the following language : " In consideration of three thousand three hundred thirty-seven dollars and eighty-one cents received of John W. Carpenter, I, Benjamin D. Peterson do hereby sell, transfer and assign unto said Carpenter the good will of a certain business for bottling cider, soda and mineral waters, now carried on by me in Burlington, together with all the stock, tools, bottles, machinery and fixtures, now in use in said business, as specified in certain inventories hereto attached, and I agree to deliver to said Carpenter the gross amount of property described in said inventories, which said inventories are signed with my name."  The inventories are referred to and made a part of the contract to show what personal property was to pass with the good will of the business.  They are not referred to for the price of the several articles included.  The master has found that the aggregate of the prices there carried out, did not amount to the sum named in the contract, and for which the notes were given, into $116.  Hence, if the prices carried out on the inventories are to be regarded as a part of the contract, they do not show that the articles were severally sold for the price set against them, but the reverse.  The contract is to be construed as a whole.  Thus construed, it is an entire, indivisible contract.  It was a sale of a business, as a going concern, including the good will, stock in trade, machinery and fixtures.  It is not to be inferred, or intended, that Peterson would have sold the good will of the business, without selling the stock in trade, machinery and fixtures, nor that Carpenter would have purchased the latter without the former.  It was not the sale of the good will as one separate transaction, of each bottle, barrel, and fixture as another separate transaction, and so divisible.  But one consideration is named or paid ; and but one thing is sold—the business, including the stock, &c., and good will as a going concern.  As said by DEVENS, J., in *Young & Conant Mfg. Co.* v. *Wakefield*, 121 Mass. 91 : " If but one consideration is paid for all the articles sold, so that it is not possible to determine the amount of consideration paid for each, the contract is entire. *Miner* v. *Bradley*, 22 Pick. 457. So if the purchase is of goods as a particular lot, even if the price is to be ascertained by the number of pounds in the lot, or num-

ber of barrels in which the goods are packed, the contract is also held entire. *Clark* v. *Baker*, 5 Met. 452 ; *Morse* v. *Brackett*, 98 Mass. 205 ; *Mansfield* v. *Trigg*, 113 Mass. 350. While in the cases last referred to, it could be ascertained what was the amount of consideration paid for each pound, or barrel, yet the articles having been sold as one lot, it was to be inferred that one pound or barrel would not have been sold unless all were sold." On these principles, if the mortgage can be upheld as a security for the payment of the consideration of the original contract, as well as the notes given in payment therefor, the consideration of the contract is entire, indivisible, and tainted with illegality, and for that reason void, and should not be enforced. To my mind, the cases principally relied upon by my associates are not authority for their decision. In *Robinson* v. *Bland*, 2 Burr. 1077, the transactions were separate and distinct. One was borrowing three hundred pounds ; the other losing three hundred seventy-two pounds in gaming. While the bill of exchange given for the two was held to be void because tainted with in part illegal consideration, the plaintiff was allowed to recover on the count for money loaned, for the three hundred pounds borrowed by the intestate. The plaintiff could establish this part of his claim without the aid of the other, in any manner. The remark of Justice DENISON, made in that case : " There is a distinction between the *contract* and the *security*. If part of the contract arises upon a good consideration, and part upon a bad one, it is divisible. But it is otherwise as to the security ; that being entire, is bad for the whole," is not to be pressed beyond the case in hand, and given universal application. His language, as to its being " *divisible*," was true as applied to the facts of that case. The law was more accurately expressed by Mr. Justice WILMOT : " Here are two sums demanded, which are blended together in one bill of exchange ; but are divisible in their nature, as to the money lent. The cases that have been cited are in point, that it is recoverable." *Carleton* v. *Woods*, 28 N. H. 290, comes nearer to supporting the decision of the majority of the court, but in my judgment, is distinguishable from the case at bar. It is there distinctly held that if the contract is entire, and part of the consideration is illegal,

Shaw *v.* Carpenter.

the contract is void ; but that where an entire stock of goods is sold, at one and the same time, but each article for a separate and distinct agreed value, the contract is not to be regarded as entire and indivisible.   The sale was for cost and freight, and WOODS, J., says : " We are unable to see how this case differs from the case of a sale by a merchant of various goods to his customers, at one and the same time, for separate values, stated at the time, which, when computed, would, of course, amount to a certain sum in the aggregate."   It was on this theory that the court held, that, although the notes could not be maintained, because a part of the consideration was for spirituous liquors illegally sold, yet, on the general counts in assumpsit, for goods sold and delivered, the plaintiff might recover for the goods sold, as the court held, independently of, and as transactions separate from, the purchase of the liquors.   To say the least, this was pressing the doctrine of divisibility of a contract to the extreme verge, and I am unwilling to go further.   There may have been more in the case than appears in the report, justifying the holding of the court.   On the facts stated, I think the authority is clearly against that contract being divisible.   That case, however, lacks the element of being the sale of a going business, including the good will, and does not appear to have been reduced to writing.   In my judgment, the decree of the Court of Chancery should be reversed, and the cause remanded, with a mandate to enter a decree dismissing the bill with costs.

TAFT, J., desires me to say that he concurs in the views I have expressed, except in regard to the sale of the cider being illegal, on which point he concurs in the views of the majority of the court.