SMILANSKY v. MANDEL BROS.

1. CORPORATIONS—FOREIGN CORPORATIONS—LICENSES—RIGHT TO RECOVERY.

That part of contract by foreign corporation not authorized to do business in this State to sell and install furniture, furnishings, decorations, etc., for hotel, which covered intrastate business, was illegal, and no action could be maintained thereon (2 Comp. Laws 1929, §§ 10118, 10120, 14027).

2. CONTRACTS—ILLEGAL TRANSACTION—CONSIDERATION.

Illegal transaction cannot constitute good consideration for promise.

3. SAME—REPEATING VOID PROMISE.

If connection between original illegal transaction and new promise can be traced, it cannot form basis of recovery, for repeating void promise cannot give it validity.

4. SAME—SETTLEMENT OF LITIGATION AS CONSIDERATION.

Ordinarily, settlement of litigation is sufficient consideration for new promise, but where litigation is to enforce illegal contract, new promise to perform same contract does not change nature of obligation, nor can it be permitted to circumvent statute adopting public policy.

5. CORPORATIONS—FOREIGN CORPORATIONS—BILLS AND NOTES—MORTGAGES—INTRASTATE BUSINESS.

Notes and mortgage, as far as they cover sums charged upon intrastate business by foreign corporation not authorized to do business in this State, are not enforceable (2 Comp. Laws 1929, § 14027).

6. SAME—HOW CHARACTER OF TRANSACTION DETERMINED.

Whether transaction by foreign corporation not authorized to do business in this State is interstate or intrastate in character must be determined by things done as well as agreement therefor.

7. PAYMENT—APPLICATION—CORPORATIONS.

Foreign corporation not authorized to do business in this State could not apply payments to illegal intrastate items of transaction rather than to legal interstate items without consent of debtors, because right of creditor to apply payments to specific accounts does not extend to illegal items representing

Validity of new contract based on compromise of illegal contract, see annotation in 9 L. R. A. (N. S.) 568.

Effect of agreement by foreign corporation to install article within the State to bring transaction within State control, see annotation in 11 A. L. R. 622, 623.

transactions prohibited by statute (2 Comp. Laws 1929, § 14027).

8. SAME—APPLICATION PRO RATA TO LEGAL AND ILLEGAL ITEMS.

Payments made to foreign corporation not authorized to do business in this State intended to be credited upon whole consideration without preference to items, should be applied *pro rata* upon legal interstate and illegal intrastate items.

9. CORPORATIONS—FOREIGN CORPORATIONS—CONTRACT CONTAINING LEGAL AND ILLEGAL ITEMS—DIVISIBILITY.

If contract respecting transaction including both interstate and intrastate items by foreign corporation not authorized to do business in this State is indivisible between interstate and intrastate business, it is not entitled to sue upon any part of it (2 Comp. Laws 1929, § 14027).

10. CONTRACTS—VALID PART OF CONTRACT MAY BE SUED ON IF DIVISIBLE.

If any part of contract in violation of statute is valid it will avail *pro tanto* though another part of it be prohibited by statute, provided the statute does not either expressly or impliedly render whole void, and provided sound part can be separated from unsound, and enforced without injustice to defendant.

11. SAME—DIVISION OF LEGAL FROM ILLEGAL ITEMS.

Division of claim into good and bad items is done from practical rather than technical considerations, unless contract otherwise demands.

12. CORPORATIONS—FOREIGN CORPORATIONS—RECOVERY MAY BE HAD FOR LEGAL ITEMS OF ILLEGAL CONTRACT.

Where illegal items of intrastate business in transaction by foreign corporation not authorized to do business in this State can be segregated from legal interstate items, recovery may be had for latter, especially where no injury results to debtor or its guarantor, as they are called upon to meet only legal obligations (2 Comp. Laws 1929, § 14027).

13. COMMERCE—INTERSTATE COMMERCE—DELIVERY—CORPORATIONS—FOREIGN CORPORATIONS.

Installation of furniture sold by foreign corporation not authorized to do business in this State is not illegal, but is mere incident of delivery which is part of interstate commerce.

Appeal from Wayne; McMahon (Maurice H.), J. Submitted April 22, 1931. (Docket No. 109, Calendar No. 35,625.) Decided June 1, 1931.

Bill by Louis Smilansky against Mandel Brothers, a foreign corporation, and Elless Company, a Michigan corporation, to restrain foreclosure of a mortgage by advertisement. Cross-bill by defendant Mandel Brothers against plaintiff and other defendant to foreclose a mortgage. Decree for cross-plaintiff. Plaintiff and defendant Elless Company appeal. Modified and affirmed.

*J. Shurly Kennary,* for appellants.

*Goodenough, Voorhies, Long & Ryan,* for appellee.

FEAD, J. As the pleadings finally stand, this suit is by cross-plaintiff Mandel Brothers for judgment against defendant Elless Company and plaintiff on certain promissory notes executed by them, and for decree of foreclosure of real estate mortgage given by plaintiff to secure the notes. Mandel Brothers had decree for the whole amount claimed.

The question is whether cross-plaintiff, a foreign corporation not authorized to do business in this State, may maintain the suit.

August 9, 1922, cross-plaintiff contracted to sell and install furniture, furnishings, decorations, etc., to an approximate amount of $230,000, in the Whittier Hotel at Detroit, owned by defendant Elless Company. Plaintiff executed the contract on behalf of defendant and also personally to guarantee its performance. The specific items were to be listed on "Mandel Brothers' General Form Contracts," which by reference were made part of the parent contract. Further purchases were provided for on similar *memoranda,* which were to be likewise part of the agreement. Approximately $325,000 of purchases were so listed, the prices of the items appearing in the *memoranda.* The sum of $150,000 was

paid on the contract and $150,000 of notes given before any goods were delivered.

In 1924, the Elless Company defaulted in payment of notes. December 18th, a new agreement was made, reciting that the debt was $139,000, that Elless Company claimed a credit of $6,000 and damages for improper work, and it was agreed that defendant and plaintiff should execute new notes for $139,000, $100,000 to be secured by mortgage executed by plaintiff, and that the claim for credit be adjusted by arbitration if they could not agree.

In 1926, payments were again in default. Mandel Brothers began suit against plaintiff and defendant in Chicago, but obtained no service on them, and garnisheed the proceeds of a bond issue on the Whittier Hotel. The court dismissed the suit, holding the fund not garnishable, and Mandel Brothers appealed. The parties negotiated, and, on November 3d, after allowing a credit of $5,000, the notes and mortgage at bar, aggregating about $100,000, were executed. In consideration, all litigation between the parties was dismissed.

Cross-plaintiff states it was conceded in circuit court that part of the total account represented interstate business, part intrastate transactions, and two items, carpets and furniture, were in dispute, both of which it claims were interstate. Plaintiff and defendant do not attack cross-plaintiff's analysis of the account in this respect except to contend that the furniture item was intrastate.

The first question is whether the adjustment of November, 1926, cleared the transaction of the statutory prohibition against cross-plaintiff maintaining the suit.

Under 2 Comp. Laws 1929, §§ 10118, 10120, a foreign corporation transacting business in Michigan

without having been admitted thereto, is subject to a penalty, as well as to 3 Comp. Laws 1929, § 14027, which reads:

"SEC. 19. But when, by the laws of this State, any act is forbidden to be done by any corporation, or by any association of individuals, without express authority by law, and such act shall have been done by a foreign corporation, it shall not be authorized to maintain any action founded upon such act, or upon any liability or obligation, express or implied, arising out of, or made or entered into in consideration of such act."

So far as the transaction at bar covered intrastate business, it was illegal in this State, and no action could be maintained upon it. *Seamans* v. *Temple Co.*, 105 Mich. 400 (28 L. R. A. 430, 55 Am. St. Rep. 457); *People's Mutual Benefit Society* v. *Lester,* 105 Mich. 716; *Swing* v. *Cameron,* 145 Mich. 175 (9 L. R. A. [N. S.] 417, 9 Ann. Cas. 332).

The rule, as stated in *Comstock* v. *Draper,* 1 Mich. 481 (53 Am. Dec. 78), is:

"It is a well settled doctrine in the English and American books, that an illegal transaction cannot constitute a good consideration for a promise. If the connection between the original illegal transaction and the new promise can be traced, if the latter is connected with and grows out of the former, no matter how many times and in how many different forms it may be renewed, it cannot form the basis of a recovery, for repeating a void promise cannot give it validity."

See, also, *Rhoades* v. *Malta Vita Pure Food Co.,* 149 Mich. 235; *Armstrong* v. *Toler,* 11 Wheat. (U. S.) 258; 13 C. J. p. 509; 6 R. C. L. p. 698.

Ordinarily, the settlement of litigation is sufficient consideration for a new promise. But where the

litigation is to enforce an illegal contract, a new promise to perform the same contract does not change the nature of the obligation. *Union Collection Co.* v. *Buckman,* 150 Cal. 159 (88 Pac. 708, 9 L. R. A. [N. S.] 568, 119 Am. St. Rep. 164, 11 Ann. Cas. 609); 12 C. J. p. 334; nor can it be permitted to circumvent a statute adopting a public policy.

In *Missouri Fidelity & Casualty Co.* v. *Art Metal Construction Co.* (C. C. A.), 242 Fed. 630, relied on by cross-plaintiff, no statute like section 14027 was involved, and the defense was interposed by a third party guarantor of the account after the work had been completed. Usually the obligation of such third party is deemed too remote from the illegal transaction to be tainted by it. See discussion in *Armstrong* v. *Toler, supra,* and *McMullen* v. *Hoffman,* 174 U. S. 639 (19 Sup. Ct. 839). Here the new engagement was by the identical parties to the original contract, to provide payment of moneys owing thereon. The notes and mortgage, as far as they cover sums charged upon the intrastate business, evidence a "liability or obligation  *  *  *  arising out of" violation of the law by cross-plaintiff. *People's Mutual Benefit Society* v. *Lester, supra.* The defense of the statute is open to plaintiff and defendant.

Cross-plaintiff, on the theory that the contract was severable, assumed to apply payments on intrastate items, and claims the account as it now stands is wholly for interstate business. Plaintiff and defendant did not authorize nor consent to such application of payments and say the contract is indivisible and suit may not be maintained for any part of it.

We need not determine whether the contract is technically inseparable as regards the rights and obligations of the parties. While the agreement is

of consequence in ascertaining the character of a transaction, its form is not determinative of the question before us, because parties cannot so enlarge or restrict the statute. The character of the transaction must be determined from the things done as well as the agreement therefor.

Even if the contract were divisible, cross-plaintiff was not justified in applying payments to intrastate items without consent of the debtors, because the right of a creditor to make application of payments to specific accounts does not extend to illegal items representing transactions prohibited by statute. 21 R. C. L. pp. 93, 94; 48 C. J. p..650; *Armour Packing Co.* v. *Vinegar Bend Lbr. Co.,* 149 Ala. 205 (42 South. 866, 13 Ann. Cas. 951, note). From the original contract and the subsequent conduct of the parties, it is also beyond argument that they intended payments to be credited upon the whole consideration without preference to items. So far as payments may be divided among items, the application must be *pro rata.*

If the contract, especially the consideration, were indivisible in fact between interstate and intrastate business, cross-plaintiff would not be entitled to sue upon any part of it. *Haughton Elevator & Machine Co.* v. *Detroit Candy Co.,* 156 Mich. 25; *Andrews* v. *Colonial Theater Co.,* 283 Fed. 471. But where, as here, the contract permits an accurate division of the whole transaction into interstate and intrastate items and the precise apportionment of the consideration to each, may suit be brought upon the legal portion? The question seems to be one of first impression.

The contract is partly illegal in this State, not because of immorality or inherent vice, but because of the statute. In such case it is said:

"The rule with respect to contracts in violation of the statute has been declared to be that if any part of an agreement is valid, it will avail *pro tanto,* though another part of it may be prohibited by statute, provided the statute does not, either expressly or by necessary implication, render the whole void, and provided the sound part can be separated from the unsound, and enforced without injustice to the defendant." 6 R. C. L. p. 814.

See, also, 24 L. R. A. (N. S.) 942, note; 26 L. R. A. (N. S.) 106, note; 13 C. J. p. 515.

"But where a claim consists of several distinct items, some good and others bad, or where the transaction is of such a nature that the good part of the consideration may be separated from the bad, the common law discriminates between them, by permitting a recovery for the former while it repudiates the latter." *Chase's Executors* v. *Burkholder,* 18 Pa. 48, 52.

The division of the claim into good and bad items is done from practical rather than technical considerations unless the contract otherwise demands. *Carleton* v. *Woods,* 28 N. H. 290; *Walker* v. *Lovell,* 28 N. H. 138 (61 Am. Dec. 605); *Boyd* v. *Eaton,* 44 Me. 51 (69 Am. Dec. 83); *Shaw* v. *Carpenter,* 54 Vt. 155 (41 Am. Rep. 837). Such method of division is particularly appropriate at bar because neither the protection of parties nor preservation of courts from enforcement of illegal claims demands a technical treatment of the contract, and "it often has been pointed out that commerce among the States is a practical not a technical conception." *Davis* v. *Commonwealth of Virginia,* 236 U. S. 697 (35 Sup. Ct. 479).

The portions of the instant contract and transaction which our statute condemns may be definitely identified and segregated so that only interstate commerce items remain. As the statute does not in-

terfere with interstate commerce, such segregation is logical.    From recovery thereon, no injury can result to plaintiff and defendant, as they are called upon to meet only their legal obligations; the policy of the State is maintained, because no recovery is allowed for prohibited acts; the statute is kept in its intended and constitutional bounds, and the result is appropriate to a court of equity.    We think the inhibition of the statute to sue should be confined to those portions of the transaction of which intrastate acts are an integral part.

The remaining question is whether the furniture item was interstate commerce.    That part of the contract included installation, which consisted of uncrating the furniture, putting it in rooms, attaching mirrors, assembling beds, dusting and polishing and removing marks or soils.

All of these things were—

"dissociated from any attempt to connect them with or make them a part in the State of property which had not and could not have been the subject of interstate commerce."    *Browning* v. *City of Waycross,* 233 U. S. 16 (34 Sup. Ct. 578).

They were mere incidents of delivery, which is a part of interstate commerce.    *Rath Packing Co.* v. *General Cold Storage Co.,* 222 Mich. 315; *Caldwell* v. *North Carolina,* 187 U. S. 622 (23 Sup. Ct. 229); *Vulcan Steam Shovel Co.* v. *Flanders,* 205 Fed. 102; *Puffer Manfg. Co.* v. *Kelly,* 198 Ala. 131 (73 South. 403).

The decree will be modified in accordance with this opinion, and affirmed, with costs of this court to plaintiff.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, SHARPE, and NORTH, JJ., concurred.